**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Common Living, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 24-11130 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: Feb. 20, 2025 at 11:00 a.m. (ET)<br>Objection Deadline: Feb. 13, 2025 at 4:00 p.m. (ET) |

**MOTION OF JPMORGAN CHASE BANK, N.A. FOR ENTRY OF
AN ORDER (I) ESTABLISHING PROCEDURES FOR CLOSING OR
TRANSITIONING BANK ACCOUNTS FOR THE BENEFIT OF CERTAIN
PROPERTY OWNERS, (II) GRANTING LIMITED RELIEF FROM THE
AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned counsel, hereby files this motion (this "Motion") and respectfully represents as follows:

**Relief Requested**

1. By this Motion, JPMC respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) approving certain procedures (the "FBO Account Procedures") pursuant to which JPMC will be authorized to, among other things, transition to certain property owners (the "Property Owners")[2] or close, as applicable, any remaining bank accounts (the "FBO Accounts")[3] titled in the name of Debtor Common Living, Inc. ("Common Living," and

---

[1] The Debtors, together with the last four digits of each of the Debtor's federal tax identification number, are: CLI Cypress LLC (3578), CLI Elmwood LLC (8150), Common Kin LLC (7483), Common Living, Inc. (7483), Common Management Co. (8014), Common TRS Inc. (8014), Mily Families Inc. (7190), and CLI Clifton LLC (2795).

[2] The Property Owners shall include, without limitation, those identified on the *Notice of Filing of List of Property Owners* [Docket No. 181] (the "Property Owner List") and any other owner of property that is subject to a Management Agreement (as defined herein) or has a relationship with any of the Debtors.

[3] For the avoidance of doubt, the relief requested in this Motion shall apply exclusively to accounts that include an FBO designation in the account name.

together with the other debtors in the above captioned cases, the "Debtors") for the benefit of the Property Owners, (ii) granting JPMC limited relief from the automatic stay to the extent necessary to effectuate the FBO Account Procedures, and (iii) granting related relief.

## Background

**I. General Background**

2.  On May 31, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). On June 3, 2024, George L. Miller ("Trustee Miller") was appointed as the chapter 7 trustee in each of the Debtors' chapter 7 cases (the "Chapter 7 Cases").

3.  The Chapter 7 Cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

4.  Based on JPMC's information and belief, the Debtors were engaged prior to the Petition Date in leasing, designing, and managing residential real estate properties in twelve cities across the United States and Canada. JPMC understands that, in connection with their businesses, the Debtors entered into management agreements (the "Management Agreements") with the Property Owners, pursuant to which the Debtors agreed to provide certain services to the Property Owners including, among other things,

collecting rents from tenants and making payments on behalf of the Property Owners (the "Property Management Services").

## II. The FBO Accounts

5. Debtor Common Living maintained numerous bank accounts at JPMC, including, without limitation, the FBO Accounts,[4] which JPMC understands were necessary to allow the Debtors could perform the Property Management Services. Upon information and belief, Common Living used the FBO Accounts to, among other things, collect rents and make payments on behalf of the Property Owners.[5] While Common Living employees were designated as authorized signers on the FBO Accounts, the FBO Accounts were generally titled as "Common Living, Inc. FBO [Identified Property Owner]," and to the best of JPMC's knowledge, any funds in such accounts belong to the applicable Property Owners. As of the Petition Date, there were approximately 115 FBO Accounts.

6. Upon the commencement of the Chapter 7 Cases, and at the direction of Trustee Miller, JPMC placed a debit hold on the FBO Accounts. In response, several Property Owners filed motions requesting relief from the automatic stay to, among other things, terminate their Management Agreements and gain control of the FBO Accounts

---

[4] JPMC is the successor in interest to First Republic Bank with respect to the FBO Accounts and re-documented the accounts under JPMC's Account Terms on May 23, 2024. Some of the FBO Accounts may have been closed subsequent thereto.

[5] In connection with the FBO Accounts, JPMC provided various treasury management services, including, without limitation, general account and depository services (e.g., account maintenance and credit posting), disbursement services (e.g., check services), reconciliation services, funds transfer services (e.g., wire transfers, Automated Clearing House (ACH) transfers), and electronic access (collectively, the "FBO Account Services"). JPMC's administration of the FBO Accounts and provision of the FBO Account Services is governed by the Account Terms (the "Account Terms"), Consolidated Service Terms (the "Service Terms") and Addendum to Account Terms (United States of America) (the "U.S. Addendum," and together with the Account Terms, Service Terms and any other account documentation, the "Bank Account Agreements").

associated with their properties. *See e.g.* Docket Nos. 190, 204.  Several other Property Owners contacted Trustee Miller and/or JPMC informally to obtain access to the FBO Accounts and the funds therein.  However, to address concerns raised by the Court and Trustee Miller that certain parties in interest, including the Debtors' estates, other Property Owners and the Property Owners' tenants, might possibly have a basis to assert an interest in the funds in the FBO Accounts as a result of comingling or otherwise, and to ensure that JPMC received proper direction as to each FBO Account, each Property Owner has been required to file a separate motion requesting access to the applicable accounts so that such motions can be served on parties in interest, including the applicable tenants.

7.   While such process resulted in the transition of funds from over sixty (60) FBO Accounts to Property Owners who filed motions with the Court, that process has now slowed leaving approximately fifty (50) FBO Accounts which remain at JPMC and are not subject to any pending Property Owner motion.

### III.   The FBO Account Procedures

8.   To bring the process of transitioning these FBO Accounts to their respective Property Owners to a close, and to avoid the cost, expense, and delay that would result from requiring each Property Owner that owns the funds in an FBO Account to file and prosecute a separate motion, JPMC respectfully requests entry of the Proposed Order approving the following FBO Account Procedures:

   a. **Small Balance Accounts**: With respect to the FBO Accounts (the "Small Balance Accounts") with a balance of less than $1,750.00[6] (the "Threshold Amount"), upon entry of the Proposed Order (i) the automatic stay shall be deemed modified to the extent necessary to allow JPMC to close such

---

[6] The Small Balance Accounts are currently estimated to be approximately 30 in number, with only five (5) accounts containing funds in excess of $15.00.

accounts in accordance with the Bank Account Agreements; and (ii) JPMC shall be authorized, but not directed, to transfer the remaining funds in the Small Balance Accounts (*via* check or other appropriate means on terms to be determined by JPMC in its discretion) to the applicable Property Owner.

b. **Large Balance Accounts:** With respect to the FBO Accounts with a balance that exceeds the Threshold Amount (the "Large Balance Accounts"):

   i. In response to a request from a Property Owner to JPMC, or as a result of outreach by JPMC to a Property Owner who is believed to be the owner of the funds (e.g., based on the Property Owner entity identified in the FBO Account title) in a Large Balance Account, each Property Owner shall provide JPMC with: (i) a signed declaration under penalty of perjury that they are the owner of the funds in the applicable Large Balance Account and the applicable real property(ies) (the "Subject Properties") to which the applicable Large Balance Accounts relate; (ii) the names of the designated account signers for the Property Owner on the Large Balance Accounts; and (iii) a list of tenants at the Subject Properties (the "Tenants").

   ii. JPMC and the applicable Property Owners shall use the information obtained from the Property Owners to complete a form of notice, substantially in the form attached to the Proposed Order as **Exhibit 1** (the "Large Balance Account Notice"), which shall include: (i) basic information regarding the Chapter 7 Cases, (ii) the name of the applicable Property Owner, (iii) the account title and the last 4 digits of the Large Balance Accounts to be transitioned to the applicable Property Owner, and (iv) the address(es) of the Subject Properties. The Large Balance Account Notice for each Property Owner, once completed, will be filed on the docket of Common Living's Chapter 7 Case by JPMC and JPMC will arrange for service of the Large Balance Account Notice on Trustee Miller, all parties in interest that filed a notice of appearance in the Chapter 7 Cases, the other Property Owners identified on the Property Owner List or subsequently identified by JPMC, and the Tenants at the applicable Subject Property (collectively, the "Notice Parties").

   iii. The Large Balance Account Notice will establish a deadline, which shall be 21 days after the filing and service of the Large Bank Account Notice, to object to the transition of the applicable Large Balance Accounts to the applicable Property Owner (the "Objection Deadline").

iv. If no objection is filed prior to the Objection Deadline, or if an objection is filed and resolved, JPMC shall be directed to (i) remove all existing authorized persons and account signers designated for the applicable Large Balance Account; (ii) remove all debit blocks directed by Trustee Miller on the applicable Large Balance Account; and (iii) add the applicable Property Owner as the authorized person on the Large Balance Account, who will be authorized to provide payment instructions, directions and otherwise transact on such account upon the direction of the authorized persons (the "Account Signers") provided to JPMC by the applicable Property Owner; *provided, however,* that prior to JPMC transitioning the applicable Large Balance Accounts to the applicable Property Owners, the Accounts Signers must: (x) provide JPMC with a completed Business Signature Card with specimen signatures and Core Signer Authorization document, as well as supporting identification for such authorized Account Signers to enable them to transact on the applicable Large Balance Accounts; and (y) work with JPMC to provide any supplemental documentation JPMC may request in order to provide such Account Signers with additional account maintenance, services or on-line access (should such access be requested by the applicable Property Owner) and to satisfy any bank regulatory and/or compliance requirements (such as "know your customer" (KYC)).

v. In addition, if no objection is filed prior to the Objection Deadline, or if an objection is filed and resolved, subject to the applicable Property Owner complying with the requirements in the foregoing paragraph, JPMC shall be authorized to accept and honor any payment instructions, directions, and other transaction requests received from the Account Signers of the applicable Property Owners with respect to the applicable Large Balance Accounts in accordance with existing processes, procedures and the governing bank account/treasury services documentation and, notwithstanding anything in the Large Balance Account Notice, this Motion, or the Proposed Order to the contrary, JPMC shall not be liable to any party on account of: (i) following such payment instructions, directions or other transaction requests; or (ii) any innocent mistake made in connection therewith despite implementation of reasonable handling procedures.

vi. If an objection to any Large Balance Account Notice is timely filed and cannot be consensually resolved, JPMC will schedule a hearing in the Chapter 7 Cases with respect to such objection.

vii. If after 60 days after JPMC and/or Trustee Miller first attempt to contact a Property Owner in writing using the contact information in the Property Owner List or such other contact information

      identified by JPMC to transition the applicable Large Balance Accounts to such Property Owner, the Property Owner fails to respond or cooperate with JPMC to complete the Large Balance Account Notice and serve the Large Balance Account Notice on the Notice Parties, the automatic stay shall be modified to the extent necessary to permit JPMC to take all steps required so that the funds in such accounts may be interplead with a court or escheated in accordance with applicable non-bankruptcy law.

  c. **Reservation of Rights**: Trustee Miller's rights to seek the turnover of any monies owed to the Debtors' estates, including, without limitation, any management fees, by any Property Owner that receives any funds from an FBO Account are expressly preserved. To the extent any funds in and FBO Account transferred pursuant to these FBO Account Procedures do not belong to a Property Owner that receives any funds in such accounts, the owner of such funds may seek an appropriate remedy from such Property Owner.

## Jurisdiction

9.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), JPMC consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested Should Be Granted

**I. The Court Has Authority to Approve the FBO Account Procedures Under Section 105(a) of the Bankruptcy Code**

10.    JPMC seeks approval of the FBO Account Procedures pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code, providing, in relevant

part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

11. Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *See, e.g., In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993). Pursuant to section 105(a) of the Bankruptcy Code, a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Tr., Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

12. As set forth above, Property Owners have filed numerous motions in the Chapter 7 Cases that request relief from the automatic stay to facilitate the transition of the FBO Accounts. *See e.g.* Docket Nos. 190, 204. Addressing each of these motions on an individual basis has been a significant burden to JPMC, and JPMC believes addressing these motions individually has burdened Trustee Miller (in the exercise of his duties) and has resulted in significant costs to the Debtors' estates. Absent a more streamlined solution, these costs will continue to accumulate, potentially deteriorating recoveries to the Debtors' creditors. Indeed, as the Court noted on the record at the hearing held on June 18, 2024 (the "June 18 Hearing"), "there needs to be a plan . . . for how we're

handling these [stay relief motions]." June 18, 2024 Hr'g Tr. at 43:19-21. Moreover, as the Court recognized at the June 18 Hearing, any delay in transitioning the FBO Accounts to the Property Owners could harm the Property Owners and, ultimately, harm the tenants at the Subject Properties, who may face interruptions to their utilities and other services if the FBO Accounts are not transitioned in a timely matter.

13. JPMC submits that no party in interest will be prejudiced by the relief requested herein. As set forth above, the FBO Account Procedures contemplate providing notice to all interested parties, including Trustee Miller, the tenants at the Subject Properties and the Property Owners on the Property Owner List. Accordingly, any party who might possibly have a basis to assert an interest in the funds in the FBO Accounts will be provided with an opportunity to object to the transition of the FBO Account in which they believe they may have an interest. Moreover, the FBO Account Procedures also include a broad reservation of rights in favor of Trustee Miller to ensure that the estates' claims vis-à-vis the Property Owners are preserved.

14. Finally, the protections afforded to JPMC by the FBO Account Procedures are necessary and appropriate under the circumstances and customary for cash management banks in bankruptcy cases. Absent the FBO Procedures and the protections afforded to JPMC in connection therewith, JPMC could face liability for violating the automatic stay, as well as claims from tenants and other parties in interest who, unbeknownst to JPMC, might possibly assert an interest in the FBO Accounts. Accordingly, JPMC submits that the FBO Procedures, as well as the protections afforded to JPMC in connection therewith, are necessary and appropriate.

15. In sum, given that the prior process for transitioning the FBO Accounts to Property Owners since the Petition Date has slowed, the FBO Account Procedures will streamline and resolve the transition of the remaining FBO Accounts to the Property Owners, reduce distractions to Trustee Miller and his professionals, minimize costs, and prevent any future harm to Property Owners and tenants, while providing adequate notice of the transfer of the FBO Accounts to all parties in interest. Accordingly, JPMC submits the FBO Account Procedures are necessary and appropriate and should be approved.

## II. Cause Exists to Grant Relief from the Automatic Stay to the Extent Necessary to Effectuate the FBO Account Procedures

16. Upon the commencement of the Chapter 7 Cases, section 362(a) of the bankruptcy code established an 'automatic stay' prohibiting any action to, among other things, exercise control over property of the Debtors' estates. *See* 11 U.S.C. § 362(a). As set forth above, although employees of Common Living, Inc. were designated as authorized signers on the FBO Accounts, the FBO Accounts were generally titled as "Common Living, Inc. FBO [Identified Property Owner]," and to the best of JPMC's knowledge, the funds in the FBO Accounts were not owned by Common Living, Inc. and are not property of the bankruptcy estate.[7] The automatic stay is not meant to be indefinite or absolute, and the Court has authority to grant relief from the stay in appropriate circumstances. *In re Rexene Prods., Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Section 362(d)(1) provides, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic stay] . . . for cause.".

17. "Cause" is not defined in the Bankruptcy Code and must be determined on a case by case basis. *See e.g., In re Rexene Prods. Co.*, 141 B.R. at 576 (citing *Matter of*

---

[7] However, Trustee Miller's rights are reserved with respect to Property Owners should it later be determined that, due to commingling or otherwise, the bankruptcy estate has an interest in such funds.

*Fernstrom Storage and Van Co.,* 938 F.2d 731, 735 (7th Cir. 1991)). Furthermore, courts determine what constitutes "cause" based on the totality of the circumstances in each particular case and enjoy wide latitude in crafting relief from the automatic stay. *See Bladino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994). The legislative history of section 362 indicates that cause may be established by a single factor such as a desire to permit an action to proceed or "lack of any connection with or interference with the pending bankruptcy case." *In re Rexene*, 141 B.R. at 576 (citing H.R. rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)).

18. Here, there is a clear "lack of any connection with or interference with the pending bankruptcy case." *In re Rexene*, 141 B.R. at 576. Indeed, as set forth above, the FBO Account Procedures are intended to minimize the burden on Trustee Miller and the Chapter 7 Cases by eliminating the need for Trustee Miller to address a separate motion filed by each Property Owner. Accordingly, because the FBO Account procedures are intended to promote efficiency in the Chapter 7 Cases rather than interfere with them, relief from stay should be granted.

19. Accordingly, for the reasons set forth above, JPMC submits that cause exists to modify the automatic stay to the extent necessary to effectuate the FBO Account Procedures.

## Notice

20. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to Trustee Miller, (iii) the Property Owners identified on the Property Owner List, and (iv) any such other party

entitled to receive notice pursuant to Bankruptcy Rule 2002. JPMC respectfully submits that no further notice of this Motion need be provided.

WHEREFORE, JPMC respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and any such other relief as the Court deems just and proper.

Dated: January 30, 2025
Wilmington, Delaware

*/s/ James F. McCauley*
**RICHARDS, LAYTON & FINGER, P.A.**
Zachary I. Shapiro (No. 5103)
James F. McCauley (No. 6991)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
E-mail: shapiro@rlf.com
        mccauley@rlf.com

*Counsel for JPMC*